## Shepherd v. Commonwealth.

(Decided June 22, 1923.)

## Appeal from Floyd Circuit Court.

1. Homicide—Evidence of Transaction Between Deceased and Defendant's Wife Held Admissible to Show Motive.—In a prosecution for murder, where it appeared that deceased was the sister of defendant's wife, who had been separated from her husband, and that she was killed while her husband was at defendant's home for the ostensible purpose of effecting a reconciliation with his wife, evidence that defendant's wife had made an advantageous land trade with deceased, and that defendant anticipated trouble with the husband of deceased if a reconciliation were effected, was competent for the purpose of showing motive.

2. Criminal Law—Admission of Hearsay Held Not to Require Reversal.—Error in admitting hearsay testimony by a witness as to certain matters that he had heard and learned, with reference to a transaction between defendant and defendant's wife, which was competent to show motive for the killing, was not sufficient of itself to necessitate a reversal of the judgment of conviction.

3. Homicide—Witnesses—Testimony Accused Had a Pistol on Former Occasion is Not Competent as Substantive Evidence, but Admissible for Impeachment.—In a prosecution for homicide, testimony that on a former occasion not connected with the transaction accused had a pistol in his possession was not admissible as substantive evidence before defendant was introduced as a witness, though it would have been admissible after he took the stand and testified that he had never owned a pistol.

4. Witnesses—Evidence Accused Was Drunk on Another Occasion was Incompetent.—In a prosecution for homicide, evidence that defendant was drunk on an occasion about two weeks before the killing was incompetent.

5. Homicide—Statements by Deceased Made Before Shooting and Out of Defendant's Presence Held Inadmissible.—In a prosecution for the killing of defendant's sister-in-law, where the prosecution claimed defendant was interested in preventing a reconciliation between deceased and her husband, statements that deceased on the day before the killing had expressed a desire to see her husband, which the witness communicated to the husband, were inadmissible against accused, having been made out of his presence.

6. Criminal Law—Homicide—Statements by Witness to Officer that Defendant Killed Deceased Held Incompetent and Prejudicial.—In a prosecution for the killing of defendant's sister-in-law, where it was a controverted issue whether the deceased was shot by defendant or by her husband, who was also indicted for the murder, evidence that shortly after the killing, the husband of deceased told a deputy constable that defendant killed deceased was incompetent as a self-serving statement on behalf of the husband, and prejudicial, since its admission tended to give added weight to his evidence, especially where contradictory statements made by him at about the same time were not permitted to go to the jury as substantive evidence, but only as affecting the credibility of the witness.

7. Homicide—Reference by Witness to Attempt to Kill Him Because of His Testimony Held Incompetent.—Where a witness for the prosecution, who had been cross-examined as to a statement made in the office of counsel for defendant, was asked on redirect examination to tell all he knew about that particular point, and properly permitted to state that he was then informed if he did not testify as defendant wished he would be killed, it was error to refuse to exclude a further statement by the witness that not long after he "was tried to be killed."

8. Homicide—Evidence Held Sufficient to Sustain Conviction Notwithstanding Conflict as to whiich of Two Persons did the Shooting.—In a prosecution for the killing of defendant's sister-in-law, evidence that the homicide occurred at defendant's home on the morning after the husband of deceased had gone to defendant's home, ostensibly to effect a reconciliation with his wife, who had been living with her sister since separating from her husband, held sufficient to sustain a conviction of defendant, though the testimony was conflicting as to whether the shooting was done by defendant or by the husband of deceased.

9. Homicide—Witness Jointly Indicted With Accused Held Not Accomplice Under Evidence.—Where defendant and the husband of deceased were jointly indicted for murder, but tried separately, and there was no evidence that they acted together in committing the homicide, but each accused the other of doing the shooting,

it was not error to fail to instruct the jury that the husband, who testified for the Commonwealth, was an accomplice.

A. J. MAY for appellant.

THOS. B. McGREGOR, Attorney General, E. L. ALLEN, C. P. STEPHENS and SMITH & CLARKE for appellee.

(OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

On the morning of August 10, 1922, Leora Allen, the wife of Wootsen Allen, was shot and killed at the home of Morgan Shepherd. The grand jury of Floyd county returned an indictment against Morgan Shepherd and Wootsen Allen, charging them with the murder, and on the separate trial of Shepherd he was convicted and sentenced to confinement in the penitentiary for life, from which judgment of conviction he has appealed.

Leora Allen was under 21 years of age. About eleven months before she was killed she had married Wootsen Allen. They had lived together for two weeks when they separated and she went to the home of her sister, the wife of appellant. She remained at that place, except for a few weeks when she visited in Greenup county, until the day that she was killed. In the meantime she had seen Allen rarely, and there had been no effort, so far as the record shows, at a reconciliation. Allen lived about six miles from appellant's residence. On August 9th he and a neighbor, George Wireman, procured some moonshine whiskey in the vicinity of the latter's home and proceeded to the home of appellant with the view, as they both say, of effecting a reconciliation between Allen and his wife and bringing her back to his home. They left Wireman's house some time in the afternoon between one and three o'clock, and, after stopping at two or three places on the way, arrived at appellant's house between nine o'clock and midnight. They had both been drinking. The house where appellant lived had only two rooms, one of which was used as sleeping quarters. Allen knocked on the door and appellant opened it, a light was found, and the testimony shows that the three sat down in the room, but in a short time Allen went over to the bed occupied by his wife and two of appellant's children and sat on the side of it. Appellant and Wireman went into the yard, where Allen had concealed that part of the whiskey that had not been consumed by him and his com-

panion on the trip to appellant's house. They concluded to send for more whiskey, and went to the home of a brother of appellant and called him and had him get Brack Pinks to go for the whiskey. Pinks borrowed Wireman's pistol and mule, and appellant and Wireman then returned to the former's house. The evidence as to what occurred thereafter, and as to the time of their return, is contradictory. There is some testimony to the effect that Allen was still in the house, but his evidence indicates that he had gone into a field nearby and lain down, where he went to sleep and did not wake until after daylight. He testified that after waking he went into the house and started to sit down with his wife and Wireman; that he heard appellant and his wife on the outside of the house, and almost immediately appellant came in and pointed a pistol at him; that the deceased jumped up and begged appellant not to shoot, whereupon appellant fired at her, striking her in the head, with the result that she was mortally wounded, and then fired at the witness as he ran away, but missed him. As to the firing of the pistol he was corroborated by Wireman, although it appears that Wireman thereafter told several people that Allen had killed his wife, which he explains by saying that appellant was with him at the time he made the statements and he was afraid to tell the truth.

Appellant's story is that he was in bed at the time Wireman and Allen came to his house, and that when they knocked on the door he let them in and, after a few minutes, went out into the yard and Wireman followed him and suggested that they get more whiskey; that after Pinks had been sent for the whiskey they returned to the house; that it was then almost day, and his wife with Leora Allen had gotten up, and he assisted them in catching and killing some chickens; and that they had breakfast, and after breakfast he went with his wife to a pigpen nearby to feed the pigs, and when they returned to the house Allen came in, shot his wife, and then fired at appellant and fled.

The grounds on which a reversal of the judgment is asked are errors in the admission and rejection of testimony, the verdict of the jury is flagrantly against the evidence, and the instructions did not state the whole law of the case in that the indictment charged Allen with being an accomplice of appellant, and the court should have instructed the jury that it could not convict appellant

upon the testimony of Allen without other corroborating evidence.

With regard to the first contention it is earnestly argued that the prosecution was permitted to prove facts relative to a land trade between Leora Allen and her sister, the wife of appellant. There was some evidence to the effect that appellant's wife had made an advantageous trade with her sister, and that appellant anticipated trouble with Allen if a reconciliation was effected between him and his wife. This evidence was competent for the purpose of showing motive. The only criticism that we can make of the court's ruling in respect to it is that one of the witnesses by whom the trade was proven was permitted to testify to certain matters that he had heard or had learned. His statements in that particular should not have been admitted, but the error in admitting them is not sufficient of itself to necessitate a reversal of the judgment.

Other incompetent and prejudicial testimony, however, was admitted. The court permitted Riley Conley to testify, over appellant's objection, that about two weeks before the killing appellant was at Sam Arnett's house and was drunk, and that the witness saw appellant with a thirty-two caliber automatic pistol at that time. This testimony was admitted as substantive evidence before appellant was introduced as a witness. It was competent for the purpose of contradicting appellant after he had testified that he did not own and had never carried a pistol, but was not competent as substantive evidence, and in no event was it permissible to prove that appellant was drunk on that occasion.

Again Lula Allen was permitted to testify, over the objection of appellant, that on the day before the killing she had seen Leora Allen, who had told her that she wanted to see her husband, and that when Allen stopped at her house she informed him of the conversation that she had had with his wife. This testimony was doubtless admitted on the idea that it disproved appellant's defense, which was that Allen and not he did the shooting. In our opinion the testimony was inadmissible. The witness' statements were not made in the presence of appellant and certainly were not admissible against him.

Shortly after the killing Allen had a conversation with Morg Mullins, a deputy constable, and the Commonwealth was permitted to prove, over the objection of ap-

pellant, that Allen told Mullins at that time that Morgan Shepherd had killed his wife. This testimony was incompetent and prejudicial. The issue between the Commonwealth and appellant was whether appellant or Allen had killed the woman. To permit the Commonwealth to bolster up its theory of the case by proving statements made by Allen, the principal witness for the Commonwealth, outside the presence of the accused, was patently prejudicial. The statement for all practical purposes was self-serving. Its admission tended to give added weight to Allen's evidence, although adverse statements made by him to Robert Johnson about the same time were not permitted to go to the jury as substantive evidence, but only as affecting the credibility of the witness. We think the court's ruling as to the latter statements was correct, but the self-serving statement made by Allen to the witness Morg Mullins should not have been introduced for any purpose.

It was also error to refuse to exclude from the consideration of the jury that part of the answer of Brack Pinks which referred to an attempt to kill him, the reference carrying the intimation that the attempt was made because of his refusal to testify as appellant had requested him to do. The witness was asked if he had not made a certain statement in the office of counsel for appellant and in the presence of several witnesses, to which he replied that he might have done so, but that he did not remember. The purpose of the inquiry was to test the credibility of a certain statement that he had made. After saying that he might have made the statement and that he had forgotten, he was asked by the Commonwealth's attorney on redirect examination to tell all he knew about that particular point. He said that he was informed that if he did not testify as Shepherd wished he would be killed. This was competent. But he added, "and it was not very long until I was tried to be killed." This part of the answer should have been excluded from the jury, as it was wholly incompetent.

These errors in the admission of testimony we think were prejudicial and require a reversal of the judgment.

However, neither of the other two grounds assigned for a reversal of the judgment is in our opinion sustainable. The evidence is ample to sustain a verdict of conviction. While there may be serious doubt as to which of the two, Allen or appellant, killed the girl, the question was one for the jury, and there is no basis for the

contention that a verdict of conviction in this case is flagrantly against the evidence.

Neither was it error to refuse to instruct the jury upon the theory that Allen was an accomplice of appellant. He was not charged in the indictment with being an accomplice nor with being an aider or abettor, and there is no testimony to show that he was an accomplice. One or the other did the shooting. There was no conspiracy or concerted action between them, and hence there was no reason for treating one as the accomplice of the other.

For the reasons stated the judgment is reversed and the cause remanded for proceedings consistent herewith.